In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-05-110 CV


____________________



TRAVELERS INSURANCE COMPANY, CERTAIN LONDON 


MARKET INSURANCE COMPANIES 


and CERTAIN UNDERWRITERS AT LLOYDS, Appellants



V.



J. RAY MCDERMOTT, INC., Appellee






On Appeal from the 58th District Court


Jefferson County, Texas


Trial Cause No. A-168,572






MEMORANDUM OPINION


 This is an accelerated interlocutory appeal of a temporary anti-suit injunction. See
Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4) (Vernon Supp. 2005). The issue we are
asked to examine is the propriety of the issuance of the injunctive relief to third-party
plaintiff, J. Ray McDermott, Inc. ("McDermott"), in an attempt to stop a parallel lawsuit filed
in Louisiana by third-party defendant, Certain London Market Insurance Companies and
Certain Underwriters at Lloyds ("London Underwriters"), against McDermott, Travelers
Insurance Company ("Travelers"), and Insurance Company of North America ("INA").
Because the record before us contains neither very special circumstances nor the potential
for an irreparable miscarriage of justice, we reverse the trial court's order and dissolve the
temporary anti-suit injunction.

 In 2002, McDermott was sued by a large number of former employees as part of a
multi-party toxic tort suit. The suit, brought as a maritime action under the Jones Act, (1) was
styled Doug Benoit, et al. v. J. Ray McDermott, Inc., et al. After being sued by the Benoit
plaintiffs, McDermott filed a third-party declaratory judgment action in the 58th District
Court in Jefferson County, Texas, against its insurers London Underwriters, Travelers, and
INA, on June 16, 2004. This action sought a judicial declaration of McDermott's rights as
well as of the obligations of its insurers for payment of the claims made by the Benoit
plaintiffs. It is not disputed that sometime in July of 2004, McDermott settled with the
Benoit plaintiffs. On July 19, 2004, Travelers filed a motion to transfer venue and an answer
subject to said motion in the Texas declaratory judgment suit. On August 23, 2004, London
Underwriters filed its answer in the Texas suit raising a number of defensive issues including
a claim of lack of personal jurisdiction by the trial court over London Underwriters and that
"Texas is an inconvenient and inappropriate forum for McDermott's claims." On the same
day, London Underwriters filed a petition for declaratory judgment in the 23rd District Court,
Assumption Parish, Louisiana, against McDermott, Travelers, and INA. On September 17,
2004, London Underwriters filed in the Texas district court a motion to dismiss McDermott's
declaratory judgment suit, and in the alternative, requested a stay from the trial court because
Texas was an improper and inconvenient forum. In support of its improper/inconvenient
forum claim, London Underwriters' motion included the following: 

 Multiple factors support a finding that Texas is neither a convenient
forum nor one in which all or a substantial part of the acts giving rise to
McDermott's Third-Party Complaint took place:



 McDermott has never been incorporated in Texas and has never had its
principal place of business in Texas. 




 Because McDermott's principle places of business are in Louisiana,
none of the insurance policies at issue were negotiated, executed or
delivered in Texas.




 The law of Louisiana likely will apply to the policies.




 Witnesses and documents relevant to the insurance policies are located
mostly in Louisiana and most, if not all, are outside of Texas.




 This action involves issues of alleged insurance coverage for claims
against McDermott arising out of the claims brought against
McDermott by former and/or current employees. These claims have
their origins in Louisiana, with an overwhelming majority of these
plaintiffs being residents of Louisiana. None of the Plaintiffs reside in
Texas.




 McDermott has settled and paid the plaintiffs' claims, so there is no
question regarding whether the plaintiffs will be compensated for their
injuries; the remaining dispute between McDermott and [London
Underwriters] is purely a contractual dispute. 




 A more convenient forum exists for this action. Contemporaneous with
their appearance in this lawsuit, [London Underwriters] filed a more
comprehensive action in state court in Assumption Parish, Louisiana,
where McDermott's corporate headquarters is located, naming
McDermott and all other insurance parties to this case as defendants. 
Louisiana's discovery and trial rules would allow this action to be
litigated expeditiously and fairly.[ (2)]



The record does not indicate whether this motion was ever considered or ruled upon by the
trial court. 

 On October 25, 2004, McDermott filed a "declinatory exception of lis pendens" with
the Assumption Parish district court seeking a stay in the Louisiana proceedings until the
Texas suit was concluded. On December 8, 2004, the Louisiana district court agreed with
McDermott and ordered a stay in the Louisiana proceedings. Thereafter, on January 3, 2005,
the Louisiana district court entered a judgment staying the London Underwriters' suit until
the conclusion of the litigation in Benoit v. McDermott that was still pending in the 58th
District Court in Jefferson County, Texas. London Underwriters, Travelers, and INA filed
motions for new trial in the Louisiana suit. Additionally, both London Underwriters and INA
filed instruments demonstrating an intent to appeal the stay issued by the Louisiana district
court. 

 Thereafter, on January 5, 2005, McDermott filed a motion to confirm the application
of Texas law to his declaratory judgment action in the Texas cause. On January 10, 2005,
McDermott filed a verified application for temporary injunction with the Texas district court.
The insurers filed various objections and motions in opposition to McDermott's anti-suit
injunction request. The trial court entertained argument from counsel regarding the anti-suit
injunction on January 28, 2005, February 7, 2005, and February 23, 2005. The trial court
ultimately issued its anti-suit injunction on February 24, 2005. It is from the granting of this
injunctive relief that the instant appeal is prosecuted by London Underwriters and Travelers. 

 The issues raised by London Underwriters and Travelers in their separate briefs are
essentially identical as they both point to an abuse of discretion by the trial court in issuing
the anti-suit injunction. The trial court's order was directed to London Underwriters,
Travelers, and INA. The injunction issued, in the words of the trial court, "to give efficacy
to the service-of-suit provisions in the policies at issue." 

 A temporary injunction is an extraordinary remedy and does not issue as a matter of
right. Walling v. Metcalfe, 863 S.W.2d 56, 57 (Tex. 1993). The question before the trial
court is whether the applicant is entitled to preserve the status quo pending trial on the merits. 
Id. at 58. The decision to grant or deny temporary injunctive relief lies in the sound
discretion of the trial court, the court's decision being subject to reversal only for a clear
abuse of that discretion. Id. The test for abuse of discretion is whether the trial court acted
without reference to any guiding rules or principles and reached "'a decision so arbitrary and
unreasonable as to amount to a clear and prejudicial error of law.'" Walker v. Packer, 827
S.W.2d 833, 839 (Tex. 1992) (quoting Johnson v. Fourth Court of Appeals, 700 S.W.2d 916,
917 (Tex. 1985). This standard, however, has different applications in different
circumstances. Id. 

 With respect to resolution of fact issues or matters committed to the trial court's
discretion, the reviewing court may not substitute its judgment for that of the trial court. Id.

 On the other hand, review of a trial court's determination of the legal
principles controlling its ruling is much less deferential. A trial court has no
'discretion' in determining what the law is or applying the law to the facts. 
Thus, a clear failure by the trial court to analyze or apply the law correctly will
constitute an abuse of discretion . . . .

 

Id. at 840 (citing Joachim v. Chambers, 815 S.W.2d 234, 240 (Tex. 1991). This abuse of
discretion standard is also applicable to a review of the issuance of an anti-suit injunction. 
See Christensen v. Integrity Ins. Co., 719 S.W.2d 161, 163 (Tex. 1986). While Texas courts
generally have the authority to enjoin parties from filing or pursuing lawsuits in other states
or countries, the principle of comity requires that courts exercise this equitable power
sparingly and only in very special circumstances. See Golden Rule Ins. Co. v. Harper, 925
S.W.2d 649, 651 (Tex. 1996); Christensen, 719 S.W.2d at 163; Gannon v. Payne, 706
S.W.2d 304, 306 (Tex. 1986). 

 Comity has been described as a doctrine grounded in cooperation and mutuality. See
K.D.F. v. Rex, 878 S.W.2d 589, 593 (Tex. 1994). 

 It is similar to full faith and credit in that it provides a framework for courts of
one jurisdiction to recognize the actions of another, but is distinguished in that
judicial comity involves a courteous willingness, as opposed to a
Constitutional imperative, among sister states to function adhesively and
harmoniously when drawn into legal disputes of common source.


3 Roy W. McDonald & Elaine A. Grafton Carlson, Texas Civil Practice §11:122
(2d ed. 2000). Because the several states comprising the United States are, in many respects,
separate and distinct legal sovereignties, no state "can demand that its laws have effect
beyond the limits of its sovereignty." Gannon, 706 S.W.2d at 306. However, under the
doctrine of comity, Texas will recognize the laws of other states with the expectation that
those states will extend Texas the same consideration. See K.D.F., 878 S.W.2d at 593-94
(citing Gannon, 706 S.W.2d at 306). 

 "There are no precise guidelines for judging the propriety of an anti-suit injunction;
the circumstances of each situation must be carefully examined to determine whether the
injunction is necessary to prevent an irreparable miscarriage of justice." See AVCO Corp.
v. Interstate Southwest, Ltd., 145 S.W.3d 257, 262 (Tex. App.--Houston [14th Dist.] 2004,
no pet.) (citing Gannon, 706 S.W.2d at 307). The Texas Supreme Court has recognized four
situations in which anti-suit injunctions are appropriate: 1) to address a threat to the court's
jurisdiction; 2) to prevent the evasion of important public policy; 3) to prevent a multiplicity
of suits; or 4) to protect a party from vexatious or harassing litigation. See Golden Rule, 925
S.W.2d at 651 (citing Gannon, 706 S.W.2d at 307). However, a party seeking an anti-suit
injunction must establish that "a clear equity demands" it, and must demonstrate that "very
special circumstances" exist . Id. (citing Christensen, 719 S.W.2d at 163). Thus injunctive
relief is necessary "to prevent an irreparable miscarriage of justice." Id. at 652 (quoting
Gannon, 706 S.W.2d at 307). 

 With the recent exception of Gonzalez v. Reliant Energy, Inc., (3) which involved only
Texas courts and the violation of a mandatory venue statute, the Texas Supreme Court's three
most recent opinions on the propriety of issuing anti-suit injunctions in jurisdictions outside
of Texas have found an abuse of discretion by the issuing court in violation of the principle
of comity. See Golden Rule, 925 S.W.2d at 651-52; Christensen, 719 S.W.2d at 162;
Gannon, 706 S.W.2d at 308. Taking these three cases together, the settled holding is that
only in extraordinary circumstances amounting to an irreparable miscarriage of justice would
an anti-suit injunction be proper. In Gannon, the risk of inconsistent judgments did not
justify the anti-suit injunction, with the Court noting that "[o]rdinarily parallel actions should
be allowed to proceed simultaneously." Gannon, 706 S.W.2d at 306, 307. Ultimately, the
Court stated, "there should be only one judgment recognized in both forums." Id. at 307. 
The Court in Christensen again permitted parallel lawsuits to proceed simultaneously in
Texas and in California. Christensen, 719 S.W.2d at 164. "A single parallel proceeding in
a foreign forum, however, does not constitute a multiplicity nor does it, in itself create clear
equity justifying an anti-suit injunction." Id. at 163. In Golden Rule, the Court, building on
its decisions in Gannon and Christensen, agreed that neither "added inconvenience" nor
"expense" will justify an injunction as both are common to and largely inevitable (4) where dual
proceedings are taking place simultaneously and are, therefore, not "very special
circumstances." Golden Rule, 925 S.W.2d at 651 (quoting Christensen, 719 S.W.2d at 163). 
Additionally, "mirror image" suits are also insufficient reason to ignore the strong principle
of comity and issue an anti-suit injunction. Id. The fact that judicial resources of both trial
and appellate courts may be wasted is also not sufficient reason for issuing such injunctive
relief. Id. (quoting Golden Rule I, 905 S.W.2d at 808). The Court concluded by strongly re-affirming the doctrine of comity among sovereigns, stating:

 "[I]f the principle of comity is to have any application, a single parallel
proceeding . . . cannot justify issuing an anti-suit injunction." Gannon, 706
S.W.2d at 307. Such a suit must be allowed to proceed absent some other
circumstances which render an injunction necessary "to prevent an irreparable
miscarriage of justice." Id. Merely because the suits present identical issues
does not make their proceeding an "irreparable miscarriage of justice."


Id. at 651-52.


 In the instant case, McDermott recognizes the requirements of Golden Rule and its
pedigree must be met in order to sustain the anti-suit injunction entered in its favor. The
record before us indicates the Louisiana action is a single parallel suit filed by London
Underwriters in the state where McDermott has its primary place of business. The fact that
the Louisiana suit may involve "mirror image" issues or claims or raise the possibility of an
inconsistent judgment will not support the trial court's anti-suit injunction. Golden Rule, 925
S.W.2d at 652 (quoting Gannon, 706 S.W.2d at 307). Furthermore, we disagree that the
presence of a service-of-suit clause in some of the insurance contracts at issue requires the
injunctive relief sought so that the insurers will not evade important public policy of Texas.
For this position, McDermott, and apparently the trial court, relies on two cases: London
Market Insurers v. American Home Assurance Co., 95 S.W.3d 702 (Tex. App.--Corpus
Christi 2003, no pet.), and American International Specialty Lines Insurance Co. v. Triton
Energy Ltd., 52 S.W.3d 337 (Tex. App.--Dallas 2001, pet. dism'd w.o.j.). In each case, the
appellate courts upheld anti-suit injunctions, finding in both very special circumstances from
the fact that the insurers in question breached their respective service-of-suit clauses by filing
parallel actions in other jurisdictions. See London Mkt., 95 S.W.3d at 709-10; Triton Energy,
52 S.W.3d at 343.

 We find that upholding and applying the principle of comity supercedes any putative
public policy interest in upholding or giving "efficacy" to service-of-suit clauses under the
particular facts and circumstances of the instant case. The record before us indicates that the
Louisiana district court extended comity to Texas and McDermott's litigation pending in the
Texas district court. Because comity is grounded in cooperation and mutuality, Texas courts
should extend comity to another state so long as that state extends comity to Texas or other
states under similar circumstances. See K.D.F., 878 S.W.2d at 594. Because the Louisiana
district court stayed all proceedings in Louisiana until the conclusion of the McDermott's
Texas action, there is nothing in the record to indicate that Louisiana may be considered
anything but a "cooperative jurisdiction." See id. at 595. The power to enjoin foreign suits
should be used "sparingly, and only in very special circumstances." Golden Rule, 925
S.W.2d at 651 (quoting Christensen, 719 S.W.2d at 163). "'[O]nly in the most compelling
circumstance does a court have discretion to issue an anti-suit injunction.'" Gannon, 706
S.W.2d at 306 (quoting Laker Airways Limited v. Sabena, Belgian World Airlines, 731 F.2d
909, 926, 927 (D.C. Cir. 1984)). The record before us provides no such compelling
circumstances nor any facts indicating a possible irreparable miscarriage of justice was
looming on the horizon. 

 Therefore, under the Golden Rule, Christensen, and Gannon decisions, we find the
trial court has abused its discretion in issuing the anti-suit injunction under the totality of the
circumstances present in the record before us. See Christensen, 719 S.W.2d at 163-64;
Gannon, 706 S.W.2d at 306. We sustain the first appellate issues presented by London
Underwriters and by Travelers. Accordingly, the remaining appellate issues need not be
addressed. The trial court's amended temporary injunction order is reversed, and the
injunction is dissolved.

 REVERSED AND RENDERED. 

 __________________________________

 CHARLES KREGER

 Justice


Submitted on July 14, 2005

Opinion Delivered April 13, 2006



Before McKeithen, C.J., Gaultney and Kreger, JJ.
1. 46 U.S.C.A. app. § 688 (2005).
2. We express no opinion as to the veracity of these allegations. We reproduce them
here only to point out that McDermott and the trial court were made aware early in the
Texas declaratory action that the insurers were challenging Texas as the proper forum in
which to proceed. 
3. 159 S.W.3d 615, 621-22 (Tex. 2005).
4. Golden Rule, 925 S.W.2d at 651 (quoting Golden Rule Ins. Co. v. Harper, 905
S.W.2d 804, 811 (Tex. App.--Houston [14th Dist.] 1995) (Edelman, J., dissenting))
(Golden Rule I).