**AMBULATORY INFUSION THERAPY SPECIALIST, INC., Appellant**

v.

**NORTH AMERICAN ADMINISTRA-TORS, INC., d/b/a North American Health Plans and Osmose, Inc., Appellees.**

No. 01–06–00756–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 10, 2008.

Eric G. Carter, The Carter Law Firm, Houston, TX, for appellant.

Mark R. Zeidman, Zeidman, Bush & Ramirez, LLC, Marc J. Krasney, Bush & Ramirez, P.C., Karla Ann Evans, Carolyn Russell, J. Alfred Southerland, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Houston, TX, for appellees.

Panel consists of Justices TAFT, KEYES, and ALCALA.

## OPINION

EVELYN V. KEYES, Justice.

Appellant, Ambulatory Infusion Therapy Specialist, Inc. ("AITS"), appeals the trial court's order granting summary judgment in favor of appellees, North American Administrators, Inc. d/b/a North American Health Plans ("NAHP") and Osmose, Inc. In six issues on appeal, AITS argues that (1) the trial court erred in sustaining NAHP's objections to AITS's summary judgment evidence; (2) the trial court erred in finding that not more than a scintilla of evidence supported AITS's claim for breach of contract; (3) the trial court erred in finding that not more than a

scintilla of evidence supported AITS's claim for promissory estoppel; (4) the trial court erred in finding that appellees established as a matter of law that AITS's state law claim for breach of contract was preempted by ERISA; (5) the trial court erred in finding that appellees established as a matter of law that AITS's state law claim for promissory estoppel was preempted by ERISA; and (6) the trial court erred in granting appellees' motion for summary judgment on limitations because appellees failed to establish as a matter of law that the statute began running prior to December of 2001.

We affirm.

## Background

C.R., an employee of Osmose, had insurance through Osmose's employee healthcare plan ("Osmose Plan"). In April 2001, C.R. needed home IV therapy medical services. Before providing medical services to C.R., AITS, an out-of-network medical provider, alleged that it called NAHP, the third-party claims administrator for Osmose, to verify that the medical services provided would be covered. An agent for NAHP told AITS that the medical services would be reimbursed. AITS then provided the medical services and sought reimbursement of $31,089.20 from NAHP on April 2, 2001. On June 26, 2001, in an "Explanation of Benefits" letter to AITS, NAHP agreed to reimburse $3,500 of AITS's claim, but denied the remaining $22,689.20 because it was above the usual and customary charges for the services rendered to C.R.[1] On August 28, 2001, AITS appealed NAHP's decision to deny the claim by letter to NAHP. By letter dated December 12, 2001, NAHP denied the appeal after determining that it had correctly paid the claim.

On October 14, 2005, AITS sued NAHP and Osmose to recover $27,589.20[2] based on the medical services it had provided to C.R. AITS brought claims for breach of contract, negligent misrepresentation, and promissory estoppel. NAHP[3] sought a traditional and no-evidence summary judgment based on the statute of limitations and on its contention that AITS's claims were preempted by the Employment Retirement Income Security Act of 1974 ("ERISA").[4] Osmose also filed a traditional motion for summary judgment.

At the summary judgment hearing, in response to the statute of limitations argument, AITS argued that it was "relying on an implicit oral agreement between plaintiff and North American Administrators pursuant to [AITS's president Connie Hudec's] conversation with Debbie," an NAHP representative, made in Hudec's telephone call to NAHP to verify coverage, in which Debbie allegedly represented that AITS's charges for services rendered to C.R. would be covered. Counsel for AITS stated that "our breach of contract claim is based on the oral agreement between [NAHP] as agent for Osmose and Ms. Hudec" and that "[w]e are not bringing a breach of contract case under an assignee of the plan. We have not stepped into the

1. The letter showed that the patient, C.R., was responsible for $4,900.

2. The $27,589.20 AITS seeks to recover apparently includes both the $4,900 that is the patient's responsibility under the Osmose Plan and the amount that is NAHP's responsibility.

3. NAHP is no longer the claims administrator for Osmose. After December 31, 2002, NAHP no longer had the authority to process claims for Osmose.

4. 29 U.S.C. §§ 1001 *et seq.* (2006). AITS abandoned its negligent misrepresentation claim because the statute of limitations is only two years.

shoes of the patient in this case." After the hearing, the trial court granted summary judgment, agreeing with the appellees that the statute of limitations had run and that AITS's claims were preempted by ERISA. AITS appeals from the trial court's order.

### ERISA

In its fourth and fifth issues, AITS contends that the trial court erred in finding that NAHP established as a matter of law that AITS's state law claims for breach of contract and promissory estoppel were preempted by ERISA and that it, therefore, can go forward with its claims.

NAHP and Osmose argued in their summary judgment motions that all of AITS's claims were preempted by ERISA because AITS's claims sought benefits under an ERISA[5] employee plan, the Osmose Plan. AITS responded,

> It is irrelevant to this case whether C.R. was covered under the Plan for the supplies and services provided by AITS, and AITS neither seeks benefits from the Plan nor claims that the Plan acted improperly in processing and denying AITS's claim. AITS's claims are thus independent of the Plan's actual obligations under the terms of the insurance policy, and AITS in no way seeks to modify those obligations. Rather, AITS, as a third-party healthcare provider, seeks damages from an insurance company and its alleged agents, claiming that, had it not been for the promise to pay for supplies and services to be provided to C.R., AITS would not have accepted the financial risk of providing said supplies and services to C.R.

 It is well established that the legal treatment of claims under Texas law focuses on the true nature of disputes

rather than allowing artful pleading to gain favorable redress under the law. *See Baylor Univ. v. Sonnichsen,* 221 S.W.3d 632, 636 (Tex.2007) (forbidding morphing contract claims into fraud causes of action). A plaintiff cannot simply recast a claim in order to avoid having its cause of action statutorily barred. *Viviano v. Moore,* 899 S.W.2d 326, 327 (Tex.App.-Houston [14th Dist.] 1995, pet. denied); *see also In re Merrill Lynch Trust Co. FSB,* 235 S.W.3d 185, 188 (Tex.2007) (applying same rule to arbitration); *Garland Cmt'y Hosp. v. Rose,* 156 S.W.3d 541, 543–44 (Tex.2004) (forbidding use of artful pleading to avoid Health Care Liability Act's requirements when essence of suit is health care liability claim). Thus, we focus on the true nature of the dispute between AITS and NAHP to determine whether or not AITS's claims are a disguised attempt to expand the terms of a benefit plan covered by ERISA and are, therefore, preempted.

### *ERISA Preemption*

 Congress enacted ERISA as a comprehensive system to regulate employee benefit plans "to promote the interests of employees and their beneficiaries in employee benefit plans ... [and] to protect contractually defined benefits." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 113, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). The act regulates both pension plans and welfare plans that provide benefits for contingencies such as illness, accident, disability, death, or unemployment. *Cathey v. Metro. Life Ins. Co.,* 805 S.W.2d 387, 388 (Tex.1991). While it provides standards and rules governing reporting, disclosure, and fiduciary responsibility for pension and welfare plans, ERISA does not mandate any particular benefits. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85,

---

**5.** AITS did not dispute that the Osmose Plan was an ERISA plan.

91, 103 S.Ct. 2890, 2896–97, 77 L.Ed.2d 490 (1983).

■ ERISA includes expansive preemption provisions, which are intended to ensure that employee benefit plan regulation be "exclusively a federal concern." *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981). To this end, Congress has statutorily provided that ERISA "shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan." EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, 29 U.S.C. § 1144(a) (2006). ERISA preemption applies not only to state laws but to all forms of state action dealing with the subject matters covered by the statute. 29 U.S.C. § 1144(c)(1); *see also Shaw,* 463 U.S. at 98, 103 S.Ct. at 2900. Accordingly, when a state court suit, alleged in terms of a state common-law or statutory cause of action, relates to an employee welfare benefit plan, ERISA may preempt the state law in favor of federal law. *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–67, 107 S.Ct. 1542, 1546–48, 95 L.Ed.2d 55 (1987); *Gorman v. Life Ins. Co. of N. Am.,* 811 S.W.2d 542, 545 (Tex.1991).

■ The ERISA preemption provision is to be broadly construed. *See Aetna Health Inc. v. Davila,* 542 U.S. 200, 216–17, 124 S.Ct. 2488, 2500, 159 L.Ed.2d 312 (2004) (stating that Court's understanding of ERISA's preemptive effect is informed by "overpowering federal policy" embodied in ERISA's civil enforcement provision, which was intended to create "an exclusive federal remedy"). However, the Supreme Court has cautioned that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21. To determine whether a state law claim has the forbidden connection to ERISA, we look to both the objectives of ERISA and the effect of the asserted state law on ERISA plans. *Egelhoff v. Egelhoff,* 532 U.S. 141, 147, 121 S.Ct. 1322, 1327, 149 L.Ed.2d 264 (2001). Because the scheme is deemed to be comprehensive with regard to the remedies provided and excluded, any state law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the Congressional intent to make the ERISA remedy exclusive and is preempted. *See Davila,* 542 U.S. at 209, 124 S.Ct. at 2495.

The Fifth Circuit Court of Appeals has propounded a two-pronged test whereby ERISA preempts a state law claim if "(1) the state law claim addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claim directly affects the relationship between the traditional ERISA entities-the employer [in its role as administrator], the plan and its fiduciaries, and the participants and beneficiaries." *Hubbard v. Blue Cross & Blue Shield Ass'n,* 42 F.3d 942, 945 (5th Cir. 1995); *see also Mayeaux v. La. Health Serv. & Indem. Co.,* 376 F.3d 420, 432 (5th Cir.2004).

■ ERISA also contains express jurisdictional provisions. Section 502(a)(1)(B) and (e) of ERISA, codified at Title 29 section 1132(a)(1)(B) of the United States Code, provides for a civil action by a beneficiary (1) "to recover benefits due to him under the terms of a plan"; (2) to enforce his rights under the plan; or (3) to clarify his rights to future benefits under the plan. 29 U.S.C. § 1132(a). Subsection (e) of section 1132 provides that the federal courts have exclusive jurisdiction over ERISA claims, except that state courts of competent jurisdiction and district courts of the United States have concurrent juris-

diction of actions by a beneficiary or plan participant within the scope of section 1132(a)(1)(B), stating, "Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this title brought by the Secretary or by a participant." 29 U.S.C. § 1132(e)(1). Thus, for actions by an ERISA plan participant "to recover benefits due [to him] under the terms of his plan," the state and federal courts have concurrent jurisdiction. *See Gorman,* 811 S.W.2d at 546; *Haynes v. Haynes,* 178 S.W.3d 350, 353 (Tex.App.-Houston [14th Dist.] 2005, pet. denied).

■■■ Even though state courts have jurisdiction over claims under ERISA section 1132(a)(1)(B) to recover benefits due under the terms of an ERISA plan, state law claims seeking relief within the scope of section 1132(a)(1)(B) are completely preempted by ERISA. *See Mayeaux,* 376 F.3d at 432; *Hubbard,* 42 F.3d at 945. Moreover, in such instances of complete preemption, a state law claim may be recharacterized as an action to recover benefits under ERISA, and the state courts will have jurisdiction over that claim, although the claim may be subject to removal to federal court as a claim "arising under" federal law. *Arana v. Ochsner Health Plan,* 338 F.3d 433, 439–40 (5th Cir.2003); *see* 28 U.S.C. §§ 1331 and 1441(a) (providing for removal). If, however, a claim relates to an employee benefit plan governed by ERISA but is not a claim for benefits due under the policy or a suit to enforce or clarify rights under the policy, and therefore within the scope of section 1132(a)(1)(B), it will fall within the exclusive jurisdiction of the federal courts under ERISA. *See* 29 U.S.C. § 1132(e)(1). Accordingly, if a state law claim relates to an ERISA plan but does not fall within the scope of section 1132(a)(1)(B) and (e)(1), an

assertion of ERISA preemption is, if successful, jurisdictional. *Saks v. Franklin Covey Co.,* 316 F.3d 337, 349–50 (2d Cir. 2003).

■■■ By contrast, if a claim falls within the scope of section 1132(a)(1)(B) and (e)(1), it will be preempted, but the preemption will ordinarily not be jurisdictional, because the state and federal courts have concurrent jurisdiction over such actions. *See Mills v. Warner Lambert Co.,* 157 S.W.3d 424, 425 (Tex.2005) (ordinarily preemption operates as affirmative defense to plaintiffs' state-law claims but does not deprive state courts of jurisdiction over those claims; state-court jurisdiction is affected only when Congress requires that claims be addressed exclusively in federal forum). Nevertheless, if a plaintiff's state law claims are preempted by ERISA section 1132(a)(1)(B), and no claim is asserted under ERISA, summary judgment dismissing those claims is appropriate. *See Mayeaux,* 376 F.3d 420, 430, 433; *Cadillac Ins. Co. v. L.P.C. Distrib. Co.,* 770 S.W.2d 892, 894–95 (Tex.App.-San Antonio 1989, writ denied) (when employer and employees did not attempt to assert cause of action under ERISA for insurer's allegedly wrongful cancellation of insurance contract and failed to make sufficient allegations to confer jurisdiction over state law claims under ERISA's "savings clause" for state law insurance, banking, and insurance claims, 29 U.S.C. § 1144(b)(2)(A), subject matter jurisdiction was not conferred on state court).

■■■ Finally, despite ERISA preemption's expansive scope, if a state law claim does not seek to recover or replace benefits under an employee welfare benefit plan and is based on a violation of a legal duty independent of ERISA, it is not preempted by ERISA and may go forward as a state law claim. *Haynes,* 178 S.W.3d at 354; *see also Davila,* 542 U.S. at 210,

124 S.Ct. at 2496. Necessarily, state law claims based on the violation of a legal duty independent of ERISA do not "relate to" ERISA so as to implicate preemption or federal jurisdiction. In such a case, absent diversity, and with no other basis for "arising under" jurisdiction, it is the federal court that is deprived of subject matter jurisdiction to hear the cause. *See, e.g., Peacock v. Thomas,* 516 U.S. 349, 352–54, 116 S.Ct. 862, 865–66, 133 L.Ed.2d 817 (1996) (holding veil-piercing claim does not state cause of action under ERISA and cannot independently support federal subject matter jurisdiction); *Hook v. Morrison Milling Co.,* 38 F.3d 776, 785–86 (5th Cir.1994) (affirming remand of common law negligence suit after finding claim did not relate to and therefore was not preempted by ERISA). Accordingly, since AITS contends its claims are based on an independent state law duty of NAHP and are not preempted, while NAHP contends AITS's claims are disguised claims to recover benefits due a participant under an ERISA plan and are, therefore, within the scope of ERISA section 1132(a)(1)(B) and are preempted, we must determine what, if any, preemptive effect ERISA has in the instant case and the resulting effect on subject matter jurisdiction.

### The Parties' Contentions

 On appeal, AITS argues that it is not seeking benefits under the Osmose Plan, but rather it is seeking damages in regard to an independent promise made by an agent of NAHP to pay for medical services given to C.R., and therefore its state law claims are not preempted by ERISA. AITS argues that "had it not been for the promise to pay for supplies and services to be provided to C.R., AITS would not have accepted the financial risk of providing said supplies and services to C.R." AITS places great emphasis on the fact that it is not seeking to recover benefits as an assignee of the patient.[6] NAHP responds that "Appellant's action to recover benefits from a covered plan falls directly within the civil enforcement provision of ERISA, which provides an exclusive federal cause of action for the resolution of such disputes." NAHP thus relies on the preemptive effect of section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B).

The arguments that AITS advances against ERISA's preemption of its claims are not novel. AITS itself has advanced identical arguments on essentially identical facts in a federal forum to an adverse conclusion. *See Ambulatory Infusion Therapy Specialists, Inc. v. Aetna Life Ins. Co.,* H–05–4389, 2007 WL 320974 (S.D.Tex. Jan. 30, 2007).[7] The federal district court set out the facts and procedural history of AITS's prior case as follows:

> Ambulatory Infusion Therapy Specialists, Inc. ("AITS"), an at-home infusion treatment provider, sued Aetna Life Insurance Company and Prudential Insurance Company of America in Texas state court, alleging a right to recover the amounts billed for medical services provided to a patient. The patient, N.D., worked for The Kroger Company, which funded an employee health insurance plan (the "Plan"). Prudential provided

---

6. In its summary judgment response, AITS admits that if it had asserted a claim as an assignee of the patient, those claims would be preempted.

7. AITS, although a party to the prior federal litigation, and its counsel, who represented it in both suits, failed to bring this contrary federal authority on federal law from the Southern District of Texas to the attention of this Court. *See* Tex.R. Prof. Conduct 3.01 and comment 2; 3.03(a)(4) and comment 3.

third-party claims administrative services to the Plan until 1999, when Aetna began providing those services.

Beginning in late 2000, AITS provided medical services to N.D. and submitted claims to Aetna for payment for those services under the Plan. Aetna paid most of the amounts invoiced but denied payment on approximately 15% to 20% of the submitted charges on the grounds that they were duplicative or exceeded the reasonable and customary fees for the services.

AITS sued Aetna and Prudential in Texas state court, asserting state-law claims for breach of contract, negligent misrepresentation, and promissory estoppel. (Docket Entry No. 9, Ex. 1, ¶¶ V–VII). The defendants removed on the grounds that ERISA completely preempted AITS's claims and that this court had diversity jurisdiction. This court denied AITS's motion to remand by Memorandum and Order issued in June 2006, finding that the breach of contract claim was completely preempted. This court ordered AITS to replead if it intended to assert an ERISA claim. AITS did replead but asserted no ERISA claim. Instead, AITS reasserted the same state-law breach of contract, negligent misrepresentation, and promissory estoppel causes of action. (Docket Entry No. 15). Aetna and Prudential filed a motion to dismiss on the basis that ERISA preemption barred all AITS's state-law claims. (Docket Entry No. 18). AITS responded, arguing that none of its claims were preempted. (Docket Entry No. 19). AITS also moved for leave to file a second amended complaint to add a state-law fraudulent misrepresentation claim. (Docket Entry No. 20).

In its Memorandum and Order of August 29, 2006, this court denied AITS's motion for leave to amend to add the fraud claim, dismissed the breach of contract claim on the basis of complete ERISA preemption, converted the defendants' motion to dismiss the remaining negligent misrepresentation and promissory estoppel claims into one for summary judgment, and set a schedule for discovery tailored to resolving the summary judgment motion. The parties have completed that discovery.

Aetna and Prudential have moved for summary judgment on AITS's negligent misrepresentation and promissory estoppel claims.

*Id.* at *1; *see also AITS v. Aetna Life Ins. Co.,* No. H–05–4389, 2006 WL 2521411 (S.D.Tex. Aug. 29, 2006); *AITS v. Aetna Life Ins. Co.,* No. H–05–4389, 2006 WL 1663752 (S.D.Tex. June 13, 2006).

In the prior federal case, as here, AITS's president, Hudec, testified that she called the patient's insurance company, Prudential Plus, to verify coverage before administering services to the patient, N.D., and spoke to "Nancy." 2007 WL 320974, at *3. This telephone call was the only conversation between AITS and either Prudential or Aetna regarding the patient's plan coverage. *Id.* at *4. "Based on her telephone call with Nancy on October 9, 2000, Hudec believed that AITS would be paid for the services it provided to N.D. under the Plan. Hudec testified that Nancy said that N.D. had out-of-network coverage under the Plan, which Hudec took to mean that 'my claims would be paid.'" *Id.* (citations to record omitted). AITS claimed that it was not asserting its claims as the patient's assignee. *Id.* at *8. Rather, it argued, as here, that it was "seeking to recover damages for services that it would not have provided 'had it not been for the communications made by Defendants' agents to pay for supplies and services to be provided to N.D.'" during

the telephone call by Hudec to verify coverage. *Id.*

The only perceivable differences between the facts in this case and the facts in the federal case are that, in the prior case, the ERISA plan and the defendants are different and, in the prior case, AITS did receive an assignment of the plan benefits provided to the patient, *see* 2006 WL 1663752, although it insisted it was not asserting its state law claims as the patient's assignee, *see* 2007 WL 320974, whereas, here, AITS did not get an assignment of benefits from the participant or the beneficiary, C.R.[8] However, we do not find that these distinctions save AITS from the same fate it suffered in federal court. AITS admits that if it did have an assignment of benefits from C.R., its claims would be preempted. To allow AITS to maintain its state law claims only on the basis that it did not have an assignment of benefits "would allow parties who lacked standing to sue under ERISA to circumvent its provisions by filing suit in state courts under state law, thereby obtaining advantages denied to parties enumerated under ERISA Section 502(a)." *Hermann Hosp. v. MEBA Med. & Benefits Plan,* 959 F.2d 569, 576, 578 (5th Cir.1992) (holding that "ERISA preempted Hermann's state law claims irrespective of whether Hermann brought those claims as an enumerated party under ERISA Section 502(a) or in another capacity"). We thus disagree with AITS's argument that it is not seeking benefits because it did not get an assignment of benefits from C.R. Its failure to obtain an assignment of the benefits on which its claim against C.R.'s employer, Osmose, and the Osmose Plan's insurer is premised does not preclude ERISA preemption.

AITS does not contend that the Osmose Plan is not an ERISA plan, nor does it contend that C.R. had no coverage under that Plan. Instead, it contends that it had a separate and independent contract with NAHP whereby NAHP agreed to pay 100% of any services AITS provided to C.R., a covered employee under the Osmose Plan. The federal courts, including the federal district court in AITS's prior suit against Aetna and Prudential, have drawn a distinction between cases in which the existence of coverage is in dispute, which are not preempted, and those in which the dispute is merely over the extent of coverage, which are preempted. *See Hermann Hosp. v. The Cent. States, Se. & Sw. Areas Health and Welfare Fund,* 962 F.Supp. 993, 997 (S.D.Tex. 1997); *AITS,* 2007 WL 320974, at *7–8.

■ In a situation in which the patient has no coverage at all, a third-party service provider's misrepresentation claim against an ERISA plan cannot "relate to" the plan because the patient, and therefore the service provider, has no connection to the plan beyond the alleged misrepresentation. *See Cent. States,* 962 F.Supp. at 997; *AITS,* 2007 WL 320974, at *7. Thus, "the proper inquiry is whether the beneficiary under the ERISA plan was covered at all by the terms of the health care policy, because if the beneficiary was not, the provider of health services acts as an independent, third party subject to the holding in *Memorial [Hosp. Sys. v. Northbrook Life Ins. Co.]* " that such a third party's independent claims are not preempted. *AITS,* 2007 WL 320974, at *8; *see Memorial,* 904 F.2d 236, 243–46 (5th Cir.1990); *see also Transitional Hosp. Corp. v. Blue Cross & Blue Shield of Tex., Inc.,* 164 F.3d 952, 954 (5th Cir.1999) ("ERISA does not preempt state law when

---

8. The record does not reflect why AITS did not get an assignment of benefits from C.R.,

but it is reasonable to presume that it was done in an attempt to bypass ERISA.

the state-law claim is brought by an independent, third-party health care provider (such as a hospital) against an insurer for its negligent misrepresentation regarding the existence of health care coverage."). When the patient has at least some coverage, however, the connection with the ERISA plan is present, and to allow the hospital to pursue its state law claims would permit the hospital to expand the limited rights granted to the plan beneficiary and thereby defeat the purposes of ERISA altogether. *Cent. States,* 962 F.Supp. at 997.

AITS's claim, although couched in terms of an attempt to recover on an independent promise to pay for medical benefits based on breach of contract and promissory estoppel, is really an attempt to expand the rights of the patient, C.R., under the Osmose Plan to 100% of services rendered by a third-party service provider, in defiance of the terms of coverage and of established law. In the words of the federal court in AITS's suit against Aetna and Prudential, the claim "simply challenges the decision that certain amounts billed were not covered by the Plan terms." *AITS,* 2007 WL 320974, at *10. The dispute is, thus, not about the existence of coverage, but about the extent of coverage. *See Cent. States,* 962 F.Supp. at 997. Therefore, although AITS did not get an assignment of benefits from C.R., its "claim is derivative of [C.R.'s] rights under the Plan and dependent on the Plan terms." *AITS,* 2007 WL 320974, at *10. As such, to resolve AITS's claim for breach of contract and promissory estoppel would require an inquiry into the Osmose Plan administration, an area of exclusive federal concern. *See id.*

We agree with the federal district court in AITS's prior suit against Aetna that AITS's state law claims fall within the purview of *Mayeaux* and are preempted.

*See Mayeaux,* 376 F.3d at 432–33; *AITS,* 2007 WL 320974, at *10. Both the *AITS* court and the *Mayeaux* court held that the plaintiff's state law claims were "in substance a collateral challenge to the ERISA insurer/administrator's coverage determination" and thus ERISA conflict preemption applied. *AITS,* 2007 WL 320974, at *10; *see Mayeaux,* 376 F.3d at 432–33.

Specifically, in *Mayeaux,* the Fifth Circuit agreed with the district court that the third-party provider's state law claims against the insurer for negligence, unfair trade practices, defamation, and intentional interference with contracts related to an ERISA plan because they challenged the insurer's "handling, review, and disposition of a request for coverage" and thus collaterally attacked the insurer's determination of the actual obligation under the terms of the insurance policy. 376 F.3d at 432–33. It concluded that if a third party "could collaterally challenge a plan's decision not to provide benefits, he would directly affect the relationship between the plan and its beneficiary, two traditional ERISA entities. That clearly cannot be allowed," and thus the state law claims could not survive ERISA conflict preemption. *Id.* at 433. The court had "no difficulty holding that 'the existence of an [ERISA] plan [was] a critical factor in establishing liability' for the state law causes of action asserted by [the plaintiff]." *Id.; see also Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 139–40, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990). Like the federal district court in AITS's prior case, the federal court of appeals in *Mayeaux* affirmed the district court's grant of summary judgment to the defendant on the plaintiff's ERISA and state law claims. *Mayeaux,* 376 F.3d at 433. We agree with both courts and do likewise.

We overrule AITS's fourth and fifth issues. We hold that AITS's state law

claims are preempted by ERISA and that the trial court properly granted summary judgment on those claims. Even if we had not concluded, however, that the trial court properly held that appellant's common law claims were pre-empted by ERISA, we would still have affirmed the summary judgment on limitations.

### Limitations

In its sixth issue on appeal, AITS argues that the trial court erred in granting summary judgment on its common law contract and promissory estoppel claims based on statute of limitations. We disagree.

A defendant moving for summary judgment on the affirmative defense of limitations must conclusively prove when the cause of action accrued. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999). The statute of limitations for a breach-of-contract cause of action is four years. TEX. CIV. PRAC. & REM.CODE ANN. § 16.004(a)(3) (Vernon 2002). Likewise, the statute of limitations for promissory estoppel is four years. *Id.* § 16.051 (Vernon 1997); *Farah v. Mafrige & Kormanik, P.C.*, 927 S.W.2d 663, 680 (Tex.App.-Houston [1st Dist.] 1996, no writ). A breach of contract claim accrues when the contract is breached. *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex.2002). The contract is not breached until a wrongful act occurs. *See Anderson v. Cocheu*, 176 S.W.3d 685, 690 (Tex.App.-Dallas 2005, pet. denied). "A cause of action generally accrues, and the statute of limitations begins to run, when facts come into existence that authorize a claimant to seek a judicial remedy." *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex. 1998). In most cases, a cause of action accrues when a wrongful act causes a legal injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur. *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex.1996).

Here, the June 26, 2001 explanation of benefits letter showed that NAHP was paying only $3,500 of AITS's $31,089.20 invoice, thus denying reimbursement for $27,589.20. Upon receipt of the June 26, 2001 letter, AITS had knowledge of an injury—the denial of benefits in the amount of $27,589.20—and, therefore, had sufficient facts to seek a judicial remedy.[9] *See Pace v. Travelers Lloyds of Tex. Ins. Co.*, 162 S.W.3d 632, 634–35 (Tex. App.-Houston [14th Dist.] 2005, mand. motion denied); *Thompson v. Great Am. Life Ins. Co.*, 2005 WL 1072706, at *3 (W.D.Tex. May 5, 2005) (holding that "the fact that Defendant would 'reconsider' its decision indicates to a reasonable recipient that a decision to deny coverage had already been made and communicated to Plaintiff. Thus ... Plaintiff possessed sufficient information to allow him to go to court to seek a judicial remedy, and his cause of action accrued on that date."). Although AITS did not know the full extent of its injury, it nonetheless knew that an injury—denial of benefits—had occurred. *See S.V.*, 933 S.W.2d at 4 (stating "a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred"). We thus conclude that the statute of limitations commenced on June 26, 2001, the date in which AITS learned that NAHP denied payment. AITS did not timely file suit within the statute of limitations, and, therefore, its state law

---

9. AITS presented no evidence to show that it could not have sought a judicial remedy at the time it learned of the denial of benefits or evidence to show that it first had to appeal the decision with NAHP before seeking a judicial remedy.

claims, if not preempted, would be time-barred.

### Conclusion

We affirm the judgment of the trial court.[10]

---

10. We note that by failing to bring to the attention of this Court adverse federal authority from the United States District Court for the Southern District of Texas in a case AITS itself previously brought against different defendants, using the same counsel as here and making identical arguments on virtually identical facts, AITS has knowingly invited this Court to err in construing federal law in an attempt to expand the liability of ERISA plans and insurers in violation of established principles of federal law and after being advised by the federal court that such claims were without merit. We thus conclude that AITS's counsel has violated Texas Disciplinary Rule of Professional Conduct 3.01, which prohibits a lawyer from bringing or defending a proceeding, or asserting or controverting an issue therein unless there is a non-frivolous basis for doing so, and Rule 3.03(a)(4), which prohibits a lawyer from failing to disclose to a tribunal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel. *See* TEX.R. PROF. CONDUCT 3.01, 3.03(a)(4), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 2005) (TEX. STATE BAR R. art. X, § 9). Because we do not find on the basis of the record before us that the violation raises "a substantial question as to the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects," *see* TEX.CODE OF JUD. CONDUCT, Cannon 3(D)(2), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. B (Vernon 2005), we decline to refer this matter for disciplinary action.