ACCEPTED
01-14-00767-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
4/3/2015 10:50:40 AM
CHRISTOPHER PRINI
CLERK

## NO. 01-14-00767-CV

### In the Court of Appeals
### for the First Judicial District
### Houston, Texas

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
4/3/2015 10:50:40 AM
CHRISTOPHER A. PRINE
Clerk

**SHIRLEY LENOIR, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF SHANA LENOIR AND CHRISTOPHER MCKNIGHT, INDIVIDUALLY AND AS NEXT FRIEND OF NAYLA MCKNIGHT**

**Appellants,**

VS.

**U. T. PHYSICIANS**

**Appellee.**

On Appeal From the 164th Judicial District Court of Harris County, Texas
Trial Court Cause No. 2012-35806
The Honorable Alexandra Smoots-Hogan, Judge Presiding

## APPELLANTS' REPLY BRIEF

THE GOURRIER LAW FIRM, LLP
Joseph M. Gourrier
joseph@gourrierlaw.com
Texas State Bar No. 24007258
530 Lovett Boulevard, Suite B
Houston, Texas 77006
Telephone:  713-533-9077
Facsimile: 713-533-9376

*Attorney for Appellants Shirley Lenoir, Individually and as Personal Representative of the Estate of Shana Lenoir and Christopher McKnight, Individually and as Next Friend of Nayla McKnight*

## ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS ...................................................................................................ii

INDEX OF AUTHORITIES ...........................................................................................iii

ARGUMENT ...................................................................................................................1

I.  UT Physicians Failed to Prove that it is a Governmental Unit and the
    Appellants Created Fact Issues Regarding the Court's Jurisdiction ..................1

    A.  The Lenoirs Did Not Make a Judicial Admission that UT Physicians
    is a Governmental Unit ...........................................................................1

    B.  The Legislature Did Not Authorize the Creation and Control of UT
    Physicians by the UT System Board of Regents.....................................3

    C.  UT Physicians Cannot Indirectly Assert Sovereign Immunity as an
    Independent Contractor According to KDF v. Rex, 878 S.W. 2d 589
    (Tex. 1994). ............................................................................................5

II. The Trial Court Erred in Granting the Plea to the Jurisdiction Because the
    Lenoirs Alleged that Shana Lenoir's Death Was Proximately Caused By An
    Employee's Use of Tangible Physical Property.................................................9

CONCLUSION..............................................................................................................15

CERTIFICATE OF COMPLIANCE.............................................................................16

CERTIFICATE OF SERVICE ......................................................................................16

# INDEX OF AUTHORITIES

PAGE(S)

## CASES

*Adams v. Rios*,
No. 14-95-00239-CV, 1996 WL 337108 (Tex. App.—Houston [14[th] Dist.] June 20, 1996, no pet.)...................................................................................13

*Ambulatory Infusion Therapy Specialist, Inc. v. N. Amer. Adm's, Inc.*,
262 S.W.3d 107 (Tex. App.—Houston [1[st] Dist.] 2008, no pet.).....................11

*Angleton Danbury Hosp. Dist. v. Chavana*,
120 S.W.3d 424 (Tex. App.—Houston [14[th] Dist.] 2003, no pet.) ...................13

*Baylor Univ. v. Sonnichsen*,
221 S.W.3d 632 (Tex.2007) ..............................................................................11

*Cnty. of Cameron v. Brown*,
80 S.W.3d 549 (Tex. 2002) ...............................................................................12

*Edinburg Hosp. Auth. v. Trevino*,
904 S.W.2d 831 (Tex. App.—Corpus Christi 1995), *rev'd on other grounds*,
941 S.W.2d 76 (Tex.1997) ................................................................................12

*Holy Cross Church of God in Christ v. Wolf*,
44 S.W.3d 562 (Tex. 2001) .................................................................................3

*Horizon/CMS Healthcare Corp. v. Auld*,
34 S.W.3d 887 (Tex.2000) ..................................................................................1

*Kamel v. Univ. of Tex. Health Sci. Ctr. at Houston*,
333 S.W.3d 676 (Tex. App.—Houston [1[st] Dist.] 2010, pet. denied) ..............11

*KDF v. Rex*,
878 S.W. 2d 589 (Tex. 1994)......................................................................5, 6, 7

*Quinn v. Mem'l Med. Ctr.*,
764 S.W.2d 915 (Tex. App.—Corpus Christi 1989, no writ)...........................12

*Rusk Sate Hosp. v. Black*,
      392 S.W.3d 88 (Tex. 2012)..................................................................................9

*Tex. Dep't of Criminal Justice v. Miller*,
      51 S.W.3d 583 (Tex. 2001)..............................................................................9, 10

*Tex. Tech. Univ. Health Sci. Ctr. v. Buford,*
      334 S.W.3d 334 (Tex. App.-Eastland 2010, no pet.) ........................................13

*TRST Corpus, Inc. v. Fin. Ctr., Inc.*,
      9 S.W.3d 316 (Tex. App.—Houston [14th Dist.] 1999, pet. denied)................5

*Wise Reg'l Health Sys. v. Brittain*,
      268 S.W.3d 799 (Tex. App.—Fort Worth 2008, no pet.) .................................12

## STATUTES & RULES

TEX. CIV. PRAC. & REM. CODE §101.001(3)...............................................................5

TEX. CIV. PRAC. & REM. CODE §101.021 (2)..............................................................9

TEX. EDUC. CODE §65.02 ......................................................................................3, 5

TEX. EDUC. CODE §65.11 .........................................................................................4

TEX. EDUC. CODE §65.35 (a).....................................................................................4

TEX. EDUC. CODE §73.001 ..................................................................................3, 4, 5

TEX. EDUC. CODE §73.057 .........................................................................................1

# ARGUMENT

## I. UT Physicians Failed to Prove that it is a Governmental Unit and the Appellants Created Fact Issues Regarding the Court's Jurisdiction.

As the movant on a plea to the jurisdiction, Appellee UT Physicians ("UTP") had the burden of establishing that it is a governmental unit entitled to raise sovereign immunity. UTP failed to meet this burden and the trial court erred in granting its plea to the jurisdiction.

### A. The Lenoirs Did Not Make a Judicial Admission that UT Physicians is a Governmental Unit.

UTP's first argument in its response brief is that the Lenoirs made a judicial admission that it is a governmental unit in response to a motion to dismiss filed by Nurse Matthews. UTP is mistaken.

A judicial admission is an assertion of fact that is conclusively established in live pleadings. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 905 (Tex.2000). Further, a judicial admission "must be a clear, deliberate, and unequivocal statement." *Id*.

In its original answer filed on July 20 2012, UTP asserted that it was a governmental unit entitled to sovereign immunity in response to the Lenoirs' claims for respondeat superior based upon Nurse Matthews' negligent conduct. Second Supp. CR 6.

1

Contrary to UTP's argument, the Lenoirs have always disputed UTP's contention that it is a governmental unit and did so their response to Nurse Matthews' motion to dismiss filed on October 29, 2013.

- "Defendant Matthews and her *alleged governmental employer* became parties to the lawsuit when Plaintiffs' Original Petition was filed on June 20, 2012." Second Supp. CR 637. (emphasis added)

- "Since Defendant UT Physicians *alleged that it was a governmental entity* and Defendant Matthews was its alleged employee, the Office of Attorney General was required to defend Matthews…" Second Supp. CR 643. (emphasis added)

- "The Office of Attorney General is Defendant Matthews' attorney as a matter of law and fact because she was *allegedly a public servant* at the time of the negligence alleged by Plaintiffs." Second Supp. CR 646. (emphasis added)

- "Since Defendant UT Physicians *claims that it is a state institution* and Defendant Matthews was its former employee…" Second Supp. CR 647. (emphasis added)

The Lenoirs also denied that UTP was a governmental unit is other responses filed in the trial court.

- "Defendant UT Physicians alleges that it is part of The University of Texas Health Science – Houston. Plaintiffs deny that is a governmental unit or part of UTHSCH, but are merely arguing in the alternative for the purpose of this response." Second Supp. CR 93 at fn. 4.

Finally and most importantly for purposes of this appeal, the Lenoirs pled a waiver claim under the TTCA, in the alternative, if the trial court determined that UTP was a governmental unit in their Second Amended Original Petition. *See,*

*Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001) ("Assertions of fact, not plead in the alternative, in the live pleadings of a party are regarded as formal judicial admissions.").

- "54. Pleading in the alternative in the event the Court determines that Defendant U.T. Physicians is a governmental unit…" CR 126.

The Lenoirs have not judicially admitted that UTP is a governmental unit and their statements above are not the type of "clear, deliberate, and unequivocal statements" sufficient under Texas law to constitute judicial admissions. *See, Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 905 (Tex.2000). Therefore, the court should reject UTP's judicial admission argument made in a desperate attempt to bolster its governmental unit argument on appeal.

**B.** **The Legislature Did Not Authorize the Creation and Control of UT Physicians by the UT System Board of Regents.**

In their opening brief, the Lenoirs conclusively established that UTP is a private, non-profit corporation and not a governmental unit entitled to raise sovereign immunity because the Legislature did not authorize its creation or addition to the UT System in the statutes creating the UT System and its components. *See*, TEX. EDUC. CODE §§65.02; 73.001. Indeed, in TEX. EDUC. CODE 65.02 (b), the Legislature expressly reserved for itself the power to add entities to the governance, control, jurisdiction or management of the UT System stating:

3

(b)  The University of Texas System shall also be composed of such other institutions and entities as from time to time may be assigned by specific legislative act to the governance, control, jurisdiction, or management of The University of Texas System.

The Legislature did not pass a specific legislative act authorizing UTP to be created and added to the UT System and without such a statute, UTP cannot claim that it is part of the UT System. The same is also true under TEX. EDUC. CODE §73.001(7), the Legislature did not authorize the creation or addition of UTP to the University of Texas at Houston when it created the other medical institutions in Houston.[1]

UTP cites TEX. EDUC. CODE §65.11 as authority for its creation, but that statute only authorizes the UT Board of Regents to administer, organize and name the institutions and entities in the UT System for maximum operating efficiency. Section 65.11 does not authorize the creation of any entities, it merely identifies that the UT System has the power to organize the entities created by the Legislature and made part of the UT System.

Similarly, TEX. EDUC. CODE §65.35 (a) does not authorize the creation of any entities as part of the UT System either, instead, the statute merely authorizes

---

[1] UTP claims that TEX. EDUC. CODE §73.057 does not apply because it is not a "hospital", however, the term "teaching hospital" is not defined in the statutes. It is clear from the record that medical residents, like Dr. Gonski, were being taught at the UTP facility by UTHSCH faculty, like Dr. Huang, which is why Gonski provided medical care to Shana Lenoir at the time of the incident.  UTP is clearly a teaching hospital under the plain meaning of the term.

4

the UT Board of Regents to govern, operate and support the entities made a part of the UT System by the Legislature in §§65.02 and 73.001.

Therefore, UTP cannot be a governmental unit, under TEX. CIV. PRAC. & REM. CODE §101.001(3)(A) or (D), for purposes of the TTCA because it is not a government agency and has no status or authority under either the Texas Constitution or Texas law because its creation was not authorized by these legal authorities. UTP has failed to meet its burden of establishing that it is a government unit under the TTCA and the trial court erred in granting its plea to the jurisdiction.

**C. UT Physicians Cannot Indirectly Assert Sovereign Immunity as an Independent Contractor According to *KDF v. Rex*, 878 S.W. 2d 589 (Tex. 1994).**

UTP cites *TRST Corpus, Inc. v. Fin. Ctr., Inc.*, 9 S.W.3d 316, 320 (Tex. App.—Houston [14th Dist.] 1999, pet. denied), in support of its argument that it is a government unit. However, the court determined that TRST was entitled to assert sovereign immunity because it was created and controlled by a governmental unit, TRS, and its sole purpose was to hold title to property for the benefit of TRS members, *not because it was a governmental unit*. However, in reaching this conclusion, the court cited *KDF v. Rex*, 878 S.W. 2d 589, 596-97 (Tex. 1994) for the proposition that a suit against a Kansas partnership operated by a Kansas state

agency was a lawsuit against the state where the two entities were not distinguishable.

The Lenoirs relied upon *KDF* in the trial court and their opening brief, but UTP made no real attempt to distinguish this controlling case. In *KDF*, the Texas Supreme Court determined that KPERS was a Kansas governmental entity created by statute, but that the Kansas Debt Fund (KDF) and Pacholder, an Ohio corporation acting as an investment advisor to KPERS, were not. *KDF*, 878 S.W.2d at 596, ("Unlike KPERS, however, K.D.F. and Pacholder are not Kansas governmental entities."). Thus, the Court had to determine whether or not KDF and Pacholder could assert sovereign immunity indirectly, even though they were not governmental entities.

To begin its analysis, the Court first looked at what types of acts would create indirect liability on the part of the state and which acts would not, stating:

> Thus, in either state, indirect liability on the part of the state will arise from the performance of ministerial functions by a state employee under the control or direction of the state, and not from (1) discretionary acts of the employee, (2) acts of independent contractors, or (3) intentional, grossly negligent, fraudulent, or malicious conduct by the employee.

*Id*. at 597.

Applying these principles to the facts of the case, the Court determined that KDF, "operates solely upon the direction of KPERS, and exercises no discretion in

6

its activities." *Id*. Therefore, KDF was entitled to assert immunity for performing essentially ministerial functions under the control and direction of KPERS.

However, the Court found that, "Pacholder operates as an independent contractor. Its activities necessarily involve considerable discretion." *Id*. Thus, the Court held that Pacholder, as an independent contractor, was not entitled to assert immunity, stating:

> While sovereign immunity protects the activities of government entities, no sovereign is entitled to extend that protection ad infinitum through nothing more than private contracts. Pacholder is not entitled to sovereign immunity protection unless it can demonstrate its actions were actions of the Kansas government, executed subject to the control of KPERS.

*Id*.

Here, UTP is not a governmental unit because it was not created by law, as set forth above. Therefore, the court must determine whether UTP is entitled to assert sovereign immunity indirectly through either the UT System or UTHSCH because it is subject to their direction and control, like KDF, or whether UTP cannot assert immunity because it is an independent contractor, like Pacholder.

Further, the court must conduct this analysis within the context of this specific case where the Lenoirs seek to hold UTP liable in respondeat superior for the negligent conduct of its former employee, Nurse Matthews. In short, the court must determine whether UTP is entitled to indirectly assert sovereign immunity because either the UT System or UTHSCH directed or controlled the nursing

7

activity performed by Nurse Matthews at the UTP clinic. The evidence in this case conclusively negates any such conclusion.

The Lenoirs offered evidence that UTP was an independent contractor to UTHSCH because it entered into an agreement with UTHSCH to administer certain business operations, including but not limited to, strategic development, marketing, billing for and collection of professional fees, contracting for professional services, clinic operations, credentialing, and managed care operations. *See, "Management Agreement" between The University of Texas Health Science Center at Houston and UT Physicians*, CR 88-95. UT Physicians is required by the Management Agreement to provide offices, furnishings and equipment, personnel (including nursing personnel), supplies, and management services to UTHSCH. *Id*.

More importantly for purposes of UT Physicians' plea to the jurisdiction and motion to dismiss under the TTCA, the Management Agreement required UT Physicians to provide nursing staff for use by UTHSCH physicians, but the nursing staff, including Nurse Matthews, remained under UT Physicians' direction and control. *See, Management Agreement,* at ¶1.4 (B) ("Nursing and Other Clinical Personnel."). CR 89. UT Physicians is paid a "management fee" for the use of its medical care facilities and services rendered. *Id.* at ¶3.1, ("Amount of Fee."). CR 91.

Since Angela Matthews was the employee of UT Physicians, an independent contractor, and UTHSCH did not have the right to control the details of her work under the plain language of the Management Agreement, UT Physicians cannot assert the UT System's or UTHSCH's sovereign immunity based on her negligent conduct.

**II.  The Trial Court Erred in Granting the Plea to the Jurisdiction Because the Lenoirs Alleged that Shana Lenoir's Death Was Proximately Caused By An Employee's Use of Tangible Personal Property.**

Alternatively, if the Court determines that UT Physicians is a governmental unit entitled to raise sovereign immunity, the trial court erred in granting UTP's plea to the jurisdiction because the Lenoirs pled a waiver of sovereign immunity based upon the use of tangible personal property by an alleged government employee that caused Shana Lenoir's death.

Under the TTCA, immunity is waived if injury or death is caused by a "condition or use of tangible personal or real property." TEX. CIV. PRAC. & REM. CODE §101.021 (2). But, immunity is waived "only when the governmental unit itself uses the property." *Rusk Sate Hosp. v. Black*, 392 S.W.3d 88, 97 (Tex. 2012). "A governmental unit does not 'use' property within the meaning of the [Texas Tort Claims Act] when it merely allows someone else to use it." *Id*. Further, merely "furnish[ing] the condition that [makes] the injury possible" does not waive immunity. *Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 588 (Tex.

9

2001). Rather, it is the use of tangible property that must have actually caused the injury. *Id.*

The case at bar is not one where someone else used the medication, as in *Black*, nor is it a case where the use of medication merely furnished the condition that made injury possible, like *Miller*. Here, it was Nurse Matthews' use of the property—i.e., the progesterone injection—that allegedly caused Shana Lenoir's death, not her medical records or some nursing judgment. Therefore, immunity has been waived and the trial court erred in dismissing the Lenoirs' claims against Matthews' alleged governmental employer, UTP.

The Lenoirs' live pleading at the time of the hearing on UTP's plea to the jurisdiction was Plaintiffs' Second Amended Original Petition. CR 118-130. The Lenoirs specifically alleged that the injection of progesterone by Nurse Matthews actually caused Shana Lenoir's death and that the administration of the injection was negligent because: (1) it was contraindicated because of Lenoir's twin pregnancy, (2) medically unnecessary because Lenoir was at least eight (8) months pregnant, (3) considered off-label use because progesterone is not approved to prevent pre-term labor by the FDA and (4) it was not ordered by a physician. CR 121,123,127 at ¶¶17-19, 38-49 and 54-57. Therefore, the Lenoirs properly pled a waiver of immunity against UTP under the TTCA for negligent use of tangible

10

personal property by Nurse Matthews and the trial court erred in granting its plea to the jurisdiction.

In its appellate brief, UTP continues to mischaracterize the Lenoirs' claims against its former employee, Angela Matthews, in an attempt to bar any claims under the TTCA. UTP argues that the progesterone injection administered by Nurse Matthews that caused Shana Lenoir's death was not use of tangible personal property, but rather the exercise of nursing judgment or use/non-use of information in her medical record. Not surprisingly, UTP spends several pages of its response brief citing cases where the courts held that immunity was not waived because the cases involved the application of medical judgment or use/non-use of information in medical records. Resp. Br. at 46-53.

It is well established that the treatment of claims under Texas law focuses on the true nature of disputes rather than allowing artful pleading to gain favorable redress under the law. *See, Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 636 (Tex.2007); *Ambulatory Infusion Therapy Specialist, Inc. v. N. Amer. Adm's, Inc.*, 262 S.W.3d 107, 112 (Tex. App.—Houston [1st Dist.] 2008, no pet.). The court is "required to construe the allegations in favor of jurisdiction unless, on its face, the petition affirmatively demonstrates a lack of jurisdiction." *Kamel v. Univ. of Tex. Health Sci. Ctr. at Houston*, 333 S.W.3d 676, 681 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). Further, in deciding a plea to the jurisdiction, a court may not

consider the merits of the case, but only the plaintiff's pleadings and the evidence pertinent to the jurisdictional inquiry. *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002).

The cases cited by UTP are inapplicable because this is not a medical judgment claim since the Lenoirs have alleged that the progesterone injection by Matthews actually caused Shana Lenoir's death, not some mental thought process or a piece of paper. Indeed, Shana Lenoir received an injection from Nurse Matthews and approximately 12 hours later, she and her unborn twins were dead from an allergic reaction. First Supp. CR 21-22; 27-29.

The present case is more akin to the cases involving the dispensing of medication which has been held to be a use of tangible personal property. *See, Quinn v. Mem'l Med. Ctr*., 764 S.W.2d 915, 917 (Tex. App.—Corpus Christi 1989, no writ) ("We hold that the dispensing of a drug by a hospital pharmacy is a use of tangible personal property and falls within the waiver provisions of the statute."); *Wise Reg'l Health Sys. v. Brittain*, 268 S.W.3d 799, 807 (Tex. App.—Fort Worth 2008, no pet.) (holding that the plaintiff's allegations that a nurse administered medications, when she should have refused to do so in light of the patient's condition, constituted use of medication and waiver of immunity); *Edinburg Hosp. Auth. v. Trevino*, 904 S.W.2d 831, 838 (Tex. App.—Corpus Christi 1995), *rev'd on other grounds*, 941 S.W.2d 76 (Tex.1997) (determining that the dispensing of drug

12

by hospital pharmacy was "use"); *Adams v. Rios*, No. 14-95-00239-CV, 1996 WL 337108, at *4 (Tex. App.—Houston [14th Dist.] June 20, 1996, no pet.) (not designated for publication).

In *Tex. Tech. Univ. Health Sci. Ctr. v. Buford,* 334 S.W.3d 334, 338 (Tex. App.-Eastland 2010, no pet.), after the court cited the cases listed above, it stated:

> The common thread running through those cases is that, in each one, the governmental unit being sued was the entity that employed those who used, by administering or dispensing, the drugs that were alleged to have caused the damages.

Here, there is no dispute that the alleged governmental unit being sued, UTP: (1) employed Nurse Matthews and (2) supplied the progesterone hormone that Matthews injected into Shana Lenoir [CR 121, ¶18], and the injection is alleged to have caused Shana Lenoir's death. Thus, the Lenoirs properly pled a waiver of immunity against UTP under Texas law and the trial court erred in granting the plea to the jurisdiction.

In its brief, UTP admits that *Angleton Danbury Hosp. Dist. v. Chavana*, 120 S.W.3d 424, 428 (Tex. App.—Houston [14th Dist.] 2003, no pet.) presented a case where waiver was proper because it involved the mistaken injection of the wrong medication.   Resp. Br. at 56.  However, UTP claims, "[I]n this case, there is no pleading or evidence that Ms. Lenoir's death was caused by Nurse Matthews' negligent injection of a medication different from the one prescribed." *Id*.  But, the Lenoirs did allege that Nurse Matthews negligently injected a different medication

13

than what was ordered by Dr. Gonski and that the injection caused Shana Lenoir's death, as set forth below.

Dr. Gonski's order for the progesterone injection is quoted in ¶17 of the petition, but the order does not specify what kind of progesterone was supposed to be administered to Shana Lenoir.

17.   Plaintiffs allege that in the physician's orders, Gonski wrote, "Progesterone shot IM weekly" and signed her name.  CR 121, ¶17.

Instead, Nurse Matthews decided on her own what progesterone to administer and it turned out not to be the right one. CR 121, ¶19.

19.   Plaintiffs allege that a 250 mg injection of progesterone was administered to Shana Lenoir by Defendant ANGELA MATHEWS, an LVN who signed her initials on the medical record.

Although 17-alpha hydroxyprogesterone caproate (17P) has been used to prevent pre-term labor, this was not the drug Nurse Matthews injected into Shana Lenoir.  CR 123, ¶39.   Instead, Nurse Matthews allegedly injected 17-hydroxyprogesterone (17-OHP), which is not the same medication.  CR 123, ¶38.

39.   Plaintiffs allege that although the American College of Obstetricians and Gynecologists (ACOG) has recommended the use of 17-alpha hydroxyprogesterone caproate (17P) for the prevention of pre-term labor, this is not the drug that was administered to Shana Lenoir.

Thus, the Lenoirs alleged that Nurse Matthews administered the progesterone injection without a physician's order. CR 124, ¶46 (A).

14

46. Plaintiffs allege that Defendant ANGELA MATHEWS engaged in several acts and omissions constituting negligence including:

A. Administering an injection without a physician order;

The Lenoirs pled a waiver of immunity because Matthews injected a different medication than was ordered by Dr. Gonski and it is alleged to have caused Shana Lenoir's death and the trial court erred in granting the plea to the jurisdiction.

## CONCLUSION

WHEREFORE PREMISES CONSIDERED, the Appellants respectfully request an order overruling the trial court's order granting Appellees UT Physicians plea to the jurisdiction, remanding this case to the trial court for further proceedings and awarding the Appellants their costs and any and all other general and equitable relief to which they may justly be entitled.

Respectfully submitted,

**THE GOURRIER LAW FIRM, PLLC**
By: __/s/ Joseph M. Gourrier__ .
JOSEPH M. GOURRIER
Texas State Bar No. 24007258
530 Lovett Boulevard, Suite B
Houston, Texas 77006
Telephone: 713-533-9077
Facsimile: 713-533-9376
joseph@gourrierlaw.com

**ATTORNEY FOR APPELLANTS**

15

## CERTIFICATE OF COMPLIANCE

As required by Texas Rule of Appellate Procedure 9.4(i)(3), Appellants certify that this brief is 3,452 words which is in compliance with Texas Rule of Appellate Procedure 9.4(i)(2).

By:  /s/ Joseph M. Gourrier
JOSEPH M. GOURRIER
Texas State Bar No. 24007258

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing instrument has been served upon all parties of record via certified mail return receipt requested and/or facsimile on the 3rd day of April, 2015.

| | |
|---|---|
| Ken Paxton<br>Daniel T. Hodge<br>David C. Mattax<br>John P. Giberson<br>Jason Warner<br>OFFICE OF THE ATTORNEY GENERAL<br>Tort Litigation Division, MC-030<br>P.O. Box 12548, Capitol Station<br>Austin, Texas 78711-2548<br>Telephone: (512) 463-2197<br>Facsimile: (512) 463-2224<br>***Attorneys for Appellee U.T. Physicians*** | David Iler<br>Jaqualine McMillan<br>Fulbright & Jaworski, LLP<br>1301 McKinney, Suite 5100<br>Houston, TX 77010-3095<br>Telephone: (713) 651-5151<br>Facsimile: (713) 651-5246<br>***Attorneys for Appellee U.T. Physicians*** |

 /s/  Joseph M. Gourrier    .
Joseph M. Gourrier